[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS
The plaintiff, Lester Baum, filed a three count complaint on April 11, 1990 against United Cable Television Corporation of Eastern Connecticut (hereinafter Eastern) and United Cable Television Corporation (hereinafter United). The first count alleges that the defendant Eastern breached a contract to sell forty-five shares of Eastern stock to the plaintiff by delivering only twenty-seven shares of the stock to the plaintiff. The second count alleges that the defendant United "interfered with the contract between the plaintiff and defendant Eastern by using its control over Eastern to have Eastern breach said contract by failing and refusing to deliver to the plaintiff eighteen (18) of the said 45 shares of stock." The plaintiff further alleges that United purchased the eighteen shares of stock from Eastern for $1,500.00 per share and that United "purchased all shares of common stock of Eastern held by others" at the price of $10,000.00 per share, except for the eighteen shares due and owing to the plaintiff. The plaintiff alleged in the third count that the defendant United owned the majority of the outstanding stock in Eastern and that United breached its fiduciary duty to the plaintiff, A minority shareholder, by using its control over Eastern to have Eastern breach its contract with the plaintiff.
On May 16, 1990, the defendant United filed a motion to dismiss because United, as "a Delaware corporation with its principle offices in Denver, Colorado, does not transact business in Connecticut or otherwise satisfy the requirements of Conn. Gen. Stat. Sec. 33-411 CT Page 1769 providing for long-arm jurisdiction." The defendant filed a memorandum of law in support of its motion pursuant to Conn. Practice Bk. Sec. 143. The plaintiff filed a memorandum in opposition to United's motion to dismiss on May 24, 1990.
A motion to dismiss is the appropriate vehicle for challenging the jurisdiction of the court. Conn. Practice Bk. Sec. 142 (rev'd to 1978, as updated October 1, 1989); see Zizka v. Water Pollution Control Authority, 195 Conn. 682, 687 (1985). A motion to dismiss shall be used to assert lack of jurisdiction over the person. Conn. Practice Bk. Sec. 143.
If a motion to dismiss does not seek to introduce facts outside of the record, it admits all facts well pleaded. Duguay v. Hopkins,191 Conn. 222, 227 (1983). The complaint is construed most favorably to the plaintiff. American Laundry Machinery, Inc. v. State, 190 Conn. 212,217 (1983). Where a motion to dismiss is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint. Barde v. Board of Trustees, 207 Conn. 59, 62 (1987); see also Garden Mutual Benefit Association v. Levy, 37 Conn. Sup. 790, 791
(App. Sess. 1981).
If a motion to dismiss is used to assert lack of personal jurisdiction over a foreign corporation, then a two-part inquiry is necessary. Frazer v. McGowan, 198 Conn. 243, 246 (1986). The court's first obligation is to decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction under the particular facts of this case. Id.; see Lombard Brothers, Inc. v. General Asset Management Co., 190 Conn. 245, 250 (1983). If the statutory requirements are met, the court's second obligation is then to decide whether the exercise of jurisdiction over the defendant would violate constitutional principles of due process. Frazer, 198 Conn. at 246; see Lombard Brothers, Inc., 190 Conn. at 250. In the establishment of facts pertaining to personal jurisdiction, it is the plaintiff who bears the burden of proof. Standard Tallow Corporation v. Jowdy,190 Conn. 48, 54 (1983).
Conn. Gen. Stat. Sec. 33-411 (c)(4) (rev'd to 1989) provides that,
 [e]very foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising. . . (4) out of tortious conduct in this state, whether arising CT Page 1770 out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.
The plaintiff argues that United is amenable to suit in Connecticut under Conn. Gen. Stat. Sec. 33-411 (c)(4) because United tortiously interfered with a Connecticut contract and breached its fiduciary duty to the plaintiff by interfering with the Connecticut contract. United argues that the plaintiff "does not allege any tortious conduct on United's part," and that, even assuming that the plaintiff's allegations do constitute a tort claim, the plaintiff's "base assertions, without supportable allegations that such conduct occurred and was related to his claim, is insufficient to show that United should be subjected to personal and [sic] jurisdiction in this case. Brass [sic] Utilities Services Corp. v. Aboubshait, 489 F. Sup. 1366,1373, affirmed, 646 F.2d 559 (D.Conn. 1980)." The plaintiff contends that Bross is inapposite because the contract with which the defendants were alleged to have interfered in that case was not a Connecticut contract, but rather it and all other relevant contracts were to be performed in Saudi Arabia. See Bross Utilities Services Corp., 489 F. Supp. at 1372.
United submitted the affidavit of Madie Gustafson Hellman, United's corporate counsel, in support of its motion to dismiss. Hellman's affidavit states that United is not licensed to transact business in Connecticut, nor does it transact or solicit business in Connecticut, nor produce, manufacture or distribute goods with the reasonable expectation that such goods are to be used or consumed in Connecticut. The affidavit further states that United was not a party to any transaction involving the sale of Eastern stock to the plaintiff "during the period from March 1, 1985 to April 30, 1985."
The plaintiff submitted an affidavit stating that Eastern is a Connecticut corporation; that on or about March 5, 1985 Eastern sent to the plaintiff at his residence in Connecticut from its office in Plainville, Connecticut, an offer of an opportunity to purchase forty-five shares of Eastern stock, to which the plaintiff responded on or about March 25, 1985 by complying with all the conditions necessary to subscribe for the stock and mailed to Plainville a check for $67,500.00 in payment. The affidavit further states that the plaintiff's subscription was accepted on or about April 19, 1985 by Eastern's letter of that date mailed from Plainville.
In the second count of his complaint, the plaintiff alleges that on or about May 20, 1987 United interfered with the contract between the plaintiff and Eastern by using its control over Eastern to have Eastern breach the contract by failing to deliver to the plaintiff eighteen shares of Eastern Stock. The plaintiff further alleges that United purchased the eighteen shares for $1,500.00 each and, on May 13, 1988, United purchased all Eastern Shares held by others for $10,000.00 per share. In the third count, the plaintiff alleges that CT Page 1771 at all times United owned the majority of the outstanding shares of Eastern and that the plaintiff was the minority shareholder. The plaintiff claims that United breached its fiduciary duty to the plaintiff by using its control over Eastern to have Eastern breach the contract by failing to deliver to the plaintiff eighteen shares of stock.
The Hellman affidavit submitted by United does not contest the plaintiff's allegation that United was the majority holder of Eastern shares. In regard to the plaintiff's tortious interference claim, Hellman's affidavit states that United was not a party to any transaction involving the sale of Eastern stock to the plaintiff from March 1, 1985 to April 30, 1985; however, the allegations of the plaintiff's complaint assert that the tortious conduct occurred on or about May 20, 1987 and after.
The facts set forth in the plaintiff's complaint and affidavit are sufficient to confer jurisdiction over United under Conn. Gen. Stat. Sec. 33-411 (c)(4). The plaintiff has alleged that United tortiously interfered with a contract made in Connecticut between two Connecticut residents. The plaintiff further alleges that United breached its fiduciary duty as the majority shareholder of a Connecticut corporation. Such actions, if proven, would constitute "tortious conduct in this state" under Conn. Gen. Stat. Sec. 33-411 (c)(4).
The United States constitution allows state courts to assert jurisdiction over nonresident defendants only when minimum contacts exist between the defendant and the forum state. Frazer v. McGowan,198 Conn. 243, 252 (1986). The nature of these contacts must be such that requiring the defendant to defend in the forum state does not offend "traditional notions of fair play and substantial justice." Id.; World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed 95 (1945).
Whether sufficient minimum contacts exist for a court to have jurisdiction is clearly dependent on the facts of each particular case. Standard Tallow Corp., 190 Conn. at 52.
 Like any standard that requires a determination of "reasonableness," the "minimum contacts" test of International Shoe is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present. Hanson v. Denckla, 357 U.S. 235, 246
[78 S.Ct. 1228, 2 L.Ed.2d 1283] (1958).
Id., quoting Kulko v. California Superior Court, 436 U.S. 84, 92, CT Page 177298 S.Ct. 1690, 56 L.Ed.2d 132, reh. denied, 438 U.S. 908, 98 S.Ct. 3127,57 L.Ed.2d 1150 (1978). The inquiry must focus on "the relationship among the defendant, the forum and the litigation." Standard Tallow Corp., 190 Conn. at 55, quoting Schaffer v. Heitner, 433 U.S. 186, 204,97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); Rush v. Savchuk, 444 U.S. 320,327, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).
United, in its motion to dismiss, did not address the due process issue, stating in its memorandum of law, "[b]ecause the plaintiff has failed to show that the Connecticut long-arm statute applies in this case, we need not reach the second issue posed in the two-tier analysis described above." The plaintiff also did not address the issue of due process.
The facts set forth in the plaintiff's complaint and affidavit are sufficient to show that United "sufficiently availed. . . [itself] of the privilege of conducting activities here" and "could reasonably have anticipated being haled into court here." Lombardo Brothers, Inc., 190 Conn. at 254-55; World-Wide Volkswagen, 444 U.S. at 297. The torts that United is alleged to have committed are directly related to United's role as the majority shareholder in a Connecticut corporation. United should expect that litigation regarding its position and actions as majority shareholder in a Connecticut corporation involving a Connecticut resident shareholder and a contract made in Connecticut between the corporation which United controls and the resident would be brought in the Connecticut courts. Asserting jurisdiction over United would not offend due process.
The defendant United Cable Television Corporation's motion to dismiss is denied.
Potter, J.